COMMISSIONER OF CORRECTION *vs.* JOHN MCCABE &
another.[1]

Suffolk. February 6, 1991. - August 12, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Imprisonment*, Escape, Transfer of prisoner. *Escape. Sex Offender. Moot
Question. Practice, Civil*, Moot case.

The Commissioner of Correction had no authority under G. L. c. 268,
§ 16, to transfer to a State correctional facility an inmate who was
committed to the treatment center as a sexually dangerous person pur-
suant to G. L. c. 123A, and who was afterward convicted of escape.
[851-853]

The Commissioner of Correction had no authority under G. L. c. 276,
§ 52A, to hold at a State correctional facility as a pretrial detainee an
inmate who was committed to the treatment center as a sexually dan-
gerous person pursuant to G. L. c. 123A, and who was afterward
charged with escape. [853-854]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 3, 1989.

The case was heard by *John C. Cratsley*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*William D. Saltzman* for the Commissioner of Correction.
*James R. Pingeon* for John McCabe.
*William J. Leahy*, Committee for Public Counsel Services,
for Christopher Rambert.

LIACOS, C.J. On October 1, 1989, the defendants, John
McCabe, James LeBlanc, and Christopher Rambert, escaped
from the treatment center for sexually dangerous persons

---

[1]Christopher Rambert. Although James LeBlanc has not pursued this
matter on appeal, he remains a defendant in the action leading to this
appeal.

(treatment center).[2] Before they were apprehended, the Commissioner of Correction (commissioner) initiated this action in the Superior Court in Suffolk County. The commissioner sought a declaration that: (1) On conviction of escape under G. L. c. 268, § 16 (1990 ed.), a treatment center inmate may be sentenced to and immediately incarcerated at a State correctional facility; and (2) once captured, a committed treatment center inmate charged with escape under G. L. c. 268, § 16, may be held in custody as a pretrial detainee and removed to await trial at a correctional institution as provided by G. L. c. 276, § 52A (1990 ed.).[3] The commissioner also sought related injunctive relief.

McCabe and LeBlanc were captured on October 4, 1989.[4] On the same day, a Superior Court judge issued a temporary

---

[2] The defendants had been committed to the treatment center under G. L. c. 123A, § 6 (1988 ed.) (repealed by St. 1990, c. 150, § 304). Section 6 provided, in part: "If the court finds that such prisoner is a sexually dangerous person, it shall commit him to the center, or a branch thereof, for an indeterminate period of a minimum of one day and a maximum of such person's natural life, or it may commit such person to a mental institution or place him upon out-patient treatment, or make such other disposition upon the recommendation of the department of mental health consistent with the purpose of treatment and rehabilitation. A person who is committed under this section shall serve his sentence concurrently with the commitment. The court shall forward its order to the appropriate commissioner or sheriff who shall thereupon transfer the person to the center, or a branch thereof, for the purpose of treatment and rehabilitation, *where he shall be held until discharged therefrom under the provisions of section nine*" (emphasis supplied).

General Laws c. 123A, § 9 (1990 ed.), provides that an individual committed to the treatment center may only be discharged after a court hearing and determination that the individual is no longer sexually dangerous. "Discharge from the center shall not operate to terminate the sentence given concurrently with the commitment, or any other unexpired sentence." *Id.*

[3] In defendant McCabe's brief to this court, he suggests that the commissioner initiated this action because, in June, 1989, a Superior Court judge issued an order prohibiting the transfer of McCabe to a State correctional facility after McCabe had stabbed another treatment center inmate. The judge ruled that G. L. c. 123A, § 6, dictated that McCabe be returned to the treatment center until he was found to be no longer a sexually dangerous person.

[4] Rambert was captured one month later in California.

restraining order, in the presence of counsel representing Mc-
Cabe and LeBlanc, authorizing the commissioner to "exer-
cise [his] rights under G. L. c. 276, § 52A, to place the de-
fendants in 'a correctional institution of the commonwealth'
pending trial of the escape complaint and/or indictment."[5]
The judge entered additional temporary orders authorizing
the continued retention of the defendants at the Massachu-
setts Correctional Institution at Cedar Junction (M.C.I.,
Cedar Junction) pending the disposition of the escape
charges. On February 8, 1990, the judge entered his final
memorandum of decision on the commissioner's motion for a
declaratory judgment. The judge ruled that, before a sexu-
ally dangerous person committed to the treatment center
under G. L. c. 123A could be transferred to a correctional
facility, that person first must be discharged in accordance
with G. L. c. 123A, § 9 (1990 ed.). A judgment was entered
the following day.[6]

The commissioner appeals from that portion of the judg-
ment ordering the return of the defendants to the treatment
center on conviction, plea, or other resolution of the pending

[5]General Laws c. 276, § 52A (1990 ed.), provides, in part, that: "Per-
sons held in jail for trial . . . if they have been previously incarcerated in a
correctional institution of the commonwealth under sentence for a felony,
may, with the approval of the district attorney, be removed by the commis-
sioner of correction to a correctional institution of the commonwealth
. . . ."

[6]Prior to a resolution of the proceedings in the Superior Court in Suffolk
County, McCabe, LeBlanc, and Rambert were charged with escape and
were arraigned in Superior Court in Plymouth County. After his arraign-
ment, Rambert submitted a motion to vacate the orders confining him to
M.C.I., Cedar Junction, pending trial, and requested that the arraigning
judge order his return to the treatment center. The judge denied the mo-
tion, ordering that Rambert remain at the correctional facility. Just prior
to receipt of the judgment in the present case, Rambert sought relief from
a single justice of this court under G. L. c. 211, § 3 (1990 ed.), arguing
that G. L. c. 276, § 52A, did not authorize his pretrial detention in a State
prison because he was committed to the treatment center under G. L.
c. 123A, § 6. The commissioner and McCabe were allowed to intervene.
The single justice denied relief and ordered the detention of McCabe and
Rambert in an institution other than the treatment center pending final
determination of the charges against them.

escape indictments.[7] Of the three defendants, only McCabe cross appeals from that portion of the Superior Court judgment that permits his confinement to a correctional facility during the pendency of his indictment. We transferred this case from the Appeals Court on our own motion.[8]

1. *Mootness.* The circumstances of this case require us to consider whether the appeal presents live issues for resolution. We follow the general rule that courts will only decide actual controversies. *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159 (1985). "Litigation ordinarily is considered moot when the party claiming to be aggrieved ceases to have a personal stake in its outcome." *Attorney Gen.* v. *Commissioner of Ins.*, 403 Mass. 370, 380 (1988), citing *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 703 (1976). The commissioner now is seeking, in his first count, a declaration which will authorize the sentencing of the defendants to a State correctional facility following their convictions on the escape charges, and their immediate incarceration at such facility for the entire term of all pending sentences, with the possible return of the defendants to the treatment center thereafter. The changed circumstances have not rendered this issue moot. Thus, we address the issue on its merits in section 2, *infra.*

---

[7]In his brief to this court, the commissioner also seeks a declaration that commitment orders under G. L. c. 123A be reconsidered and alternative dispositions be entered. This issue was not raised in the Superior Court; it is not properly before us. Thus, we do not address it. See *Porter* v. *Treasurer & Collector of Taxes of Worcester*, 385 Mass. 335, 338 n.5 (1982).

[8]Subsequent to the filing of these appeals, each of the defendants pled guilty to the escape charges. Sentences were imposed "from and after" the sentences they were already serving when they escaped. The commissioner requested the sentencing judge to reconsider the earlier order requiring McCabe's transfer to the treatment center. The request was denied. While that request was pending, McCabe filed a complaint for contempt in the Superior Court in Suffolk County, contending that the commissioner no longer had authority to retain him at M.C.I., Cedar Junction, because McCabe had been sentenced. The judge denied the complaint and issued a stay, pending this appeal, of the February, 1990, judgment which ordered that the defendants be returned to the treatment center upon disposition of their escape indictments. During the pendency of the matter presently before us, only McCabe has remained at M.C.I., Cedar Junction.

In his second count, the commissioner seeks authority to hold the defendants, charged with escape under G. L. c. 268, § 16, in custody as pretrial detainees and to remove them to await trial at a State correctional facility as provided by G. L. c. 276, § 52A. Each of the defendants has been convicted and no longer is a pretrial detainee. Therefore, this count of the commissioner's complaint, and McCabe's appeal from the Superior Court ruling thereon, are moot.

On occasion, we have considered questions which are moot "where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot." *Norwood Hosp.* v. *Munoz*, 409 Mass. 116, 121 (1991), quoting *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984). See *Attorney Gen.* v. *Commissioner of Ins.*, *supra*. The issue whether the commissioner may confine the defendants at a State correctional facility as pretrial detainees is capable of repetition while evading review, because future defendants may be convicted for the underlying escape charges and lose their "pretrial detainee" status before the commissioner could effectuate an appeal. Therefore, we reach the merits of this claim in section 3, *infra*.

2. *Transfer to State correctional facility of treatment center inmates convicted of escape.* The commissioner is seeking a declaration authorizing him to transfer the defendants to a State correctional facility immediately after their conviction and sentencing for escape, to be incarcerated for the full term of their unexpired underlying sentences and the escape sentences, with the possible return to the treatment center thereafter. The commissioner asserts that G. L. c. 268, § 16, authorizes him immediately to transfer treatment center inmates to a State correctional facility once they have been convicted of escape.[9] General Laws c. 268, § 16,

---

[9]General Laws c. 268, § 16 (1990 ed.), provides: "A prisoner of any penal institution or a person committed under the provisions of section five

does not grant the commissioner the power to confine the defendants at a State correctional facility for their unexpired sentences. The punishment prescribed by § 16 is power granted to a judge who sentences a defendant after conviction of a violation of § 16.

Further, G. L. c. 123A, § 6, provides that a person committed to the treatment center "shall be held until discharged therefrom under the provisions of section nine." Section 9 provides for discharge only when, after a court hearing, the individual is found to be no longer sexually dangerous. See G. L. c. 123A, § 9. Discharge of a sexually dangerous person is so limited to prevent an individual, whom a judge has determined to be sexually dangerous, from being returned to society without having been successfully treated for his condition. To otherwise allow the transfer of an individual from the treatment center to a State correctional facility which does not have a treatment center branch unit would prevent further treatment of that individual.[10] Once the individual completes the sentences for which he was confined in prison, he will be released, but he may still be sexually dangerous. Clearly this was not the intent of the Legislature in enacting G. L. c. 123A. See *Commissioner of Mental Health* v. *Gagne*, 19 Mass. App. Ct. 545, 550 (1985). "The remedial purpose of [G. L. c. 123A], namely the care, treatment and rehabilitation of the sexually dangerous person,

---

or six of chapter one hundred and twenty-three A to a treatment center or branch thereof described in sections two and four of said chapter one hundred and twenty-three A, or a prisoner committed to any jail or correctional institution under a lawful order of the court, who escapes or attempts to escape from any such institution or from land appurtenant thereto, or from the custody of any officer thereof while being conveyed to or from said institution, center or branch, or fails to return from any temporary release from said institution under the provisions of section ninety A of chapter one hundred and twenty-seven, or fails to return from any temporary release from said institution, center or branch, may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one-half years."

[10]The commissioner concedes in his brief that "the Commonwealth has no branch of the Treatment Center" at M.C.I., Cedar Junction.

must not be overlooked; indeed that is the primary objective and there must be more than mere incarceration if the statute is to 'escape constitutional requirements of due process.'" *Commonwealth* v. *Hogan*, 341 Mass. 372, 376 (1960), quoting *Commonwealth* v. *Page*, 339 Mass. 313, 318 (1959). The order requiring the return of the defendants to the treatment center was correct.

3. *Confinement of treatment center inmates in a State correctional facility as pretrial detainees under G. L. c. 276, § 52A.* The commissioner argues that G. L. c. 276, § 52A, authorizes him to hold treatment center inmates at a State correctional facility as pretrial detainees pending resolution of the escape indictments, in order to ensure the defendants' presence at trial and to protect the public from possible future escapes by the defendants from the treatment center.[11] Our analysis of this issue is essentially the same as our analysis in section 2, *supra*. Nothing in G. L. c. 123A authorizes the commissioner to confine the defendants, who have been committed to the treatment center, at any other facility. The words of the statute and the legislative intent in enacting G. L. c. 123A are clear. Cf. *Rambert* v. *Commonwealth*, 389 Mass. 771 (1983). The defendants must be confined at the treatment center until such time as they are found to be

---

[11]The commissioner contends that the treatment center is an inadequate facility for the secure confinement of the defendants. Yet the commissioner has not indicated any reason why he or the Commissioner of Mental Health, by way of existing statutes and regulations, or through the promulgation of regulations, could not secure adequately the defendants' confinement at the treatment center. See, e.g., G. L. c. 124, § 1 (*b*) & (*q*) (1990 ed.) (Commissioner of Correction's authority to enforce measures to prevent escapes and authority to promulgate appropriate regulations); G. L. c. 19, § 18 (1990 ed.) (Commissioner of Mental Health's authority to promulgate appropriate regulations); 104 Code Mass. Reg. § 8.10 (1986) (Department of Mental Health tier system of security at treatment center). See also G. L. c. 123A, § 2 (1990 ed.), which provides, in part, that "[t]he commissioner of correction shall appoint custodial personnel [to the treatment center] who shall be subject to the control of the commissioner of mental health with respect to the care, treatment and rehabilitation of persons in their custody, but who shall at all times be under the administrative, operational and disciplinary control of the commissioner of correction."

no longer sexually dangerous. The order staying the return of McCabe to the treatment center was not appropriate.

*Judgment affirmed.*