Garsh, J.
Defendant Barry Troy (“Troy”) moves to dismiss all the indictments pending against him on the grounds that the integrity of the grand jury proceeding was impaired because the Commonwealth relied on hearsay testimony and presented false evidence, and, in addition, he moves to dismiss the indictment for larceny in a building on the basis that the grand jury had insufficient evidence to warrant the issuance of that indictment. For the reasons set forth below, Troy’s motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
On August 23, 1995, the grand jury in Essex County returned the following indictments: (1) unarmed robbery of a person over 65 years old; (2) larceny from a person over 65 years old; (3) breaking and entering with intent to commit a felony, putting a person in fear; and (4) larceny in a building. The Commonwealth decided not to prosecute the indictments for unarmed robbery and larceny from a person following Barry’s motion to have these indictments dismissed, as well, for lack of probable cause to indict him for those crimes.
Detective Thomas Williams (“Williams”) of the Gloucester Police Department testified before the grand jury. Williams stated that just before 1:00 p.m. on June 27, 1995, a neighbor of the complainants reported that he saw “a male suspect approximately six foot, thin build, wearing an orange T-shirt on the back porch of 70 Harrison Avenue.” Around 3:20 p.m. that same day, police received a call concerning an intruder at 70 Harrison Avenue. In response, the police arrived and spoke to Ms. Scola (“Scola”), who informed the police that she was home with her grandmother and that, about 3:20 p.m., she heard her grandmother scream in the living room area. The grandmother screamed, “Put down my pocketbook. Put down my pocketbook.”
Scola then “went into the living room, observed the man wearing a red bandanna across his face, white hat and orange T-shirt. She subsequently chased the individual from the house with the grandmother’s purse, up the street.” While she chased him, the accused’s bandanna fell from his face and Williams told the grand jury that Scola had told the police that she then “got a good look at him.” The grand jury heard that Troy was eventually caught hiding in some bushes with a “red bandanna and sunglasses.”
Troy was brought back to 70 Harrison Avenue by Lieutenant McCloud and Sergeant Crippen whereupon they spoke with Scola, who again gave a description of the suspect that matched Troy. The officers brought Scola to the cruiser. There, Scola made a positive identification of Troy as the man whom she had earlier seen in the house.
The officers brought Troy to the police station. During an inventory search, a silver bracelet, a silver necklace, and approximately seventy dollars (consisting of a fifty-dollar bill, some apparently new, shiny quarters and other change, and additional currency) were recovered from Troy’s pocket. At the station, Scola identified the bracelet and the necklace as items from her home on 70 Harrison Avenue, and the grandmother told the police that she had had a fifty dollar bill in her wallet and some shiny quarters.
DISCUSSION
As a general rule, “an indictment valid on its face should not be dismissed absent a showing that the defendant’s ability to obtain a fair trial is prejudiced.” Commonwealth v. Pellegrini, 414 Mass. 402, 405-06 (1993). See Commonwealth v. Badgett, 38 Mass.App.Ct. 624, 625 (1995). A challenge to the validity of an indictment will be successful when the motion demonstrates that the integrity of the grand jury proceedings was impaired or that the evidence presented to the grand jury was insufficient to support the existence of probable cause to arrest the defendant for the crime charged. Id.; Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). Probable cause to arrest is a “considerablly] less exacting [standard] than a requirement of sufficient evidence to warrant a finding of guilty.” Commonwecdthv. O’Dell, 392 Mass. 445, 451 (1984).
Hearsay
While “sound policy dictates a preference for the use of direct testimony before grand juries,” an indictment may be based solely on hearsay. Commonwealth v. St. Pierre, 377 Mass. 650, 656 (1979). See also Commonwealth v. O’Dell, 392 Mass. at 450-51; Mass.R.Crim.P. 4(c). The grand jury heard information provided by Scola to the police concerning what she herself saw as well as her identification of the defendant and the identification by her and her grandmother of objects *656 found on the defendant. This information, although all in the form of hearsay, is “in its detail and circumstan-tiality” enough to meet the standard applied to testing the basis of arrest warrants. Commonwealth v. St. Pierre, 377 Mass. at 656-57. The grand jurors heard sufficient evidence to establish the identity of the accused and, except as discussed below, probable cause to believe that the defendant committed the offenses charged. Commonwealth v. O'Dell, 392 Mass. at 450. No additional direct evidence was required.
False Testimony
The Commonwealth concedes that Williams erroneously told the grand jury that a neighbor had seen a male wearing an orange T - shirt when, in fact, he had told the police he had seen a young man wearing a red shirt. That error, however, does not amount to impairment of the integrity of the grand jury. There is no evidence that Williams intentionally misspoke; I draw no such inference from the grand jury testimony itself.[1] Moreover, the mistake was not material. Nothing said by Williams distorted the crucial information given to the police by Scola or by her grandmother. Had the testimony been correct, it is extremely unlikely that the result would have been any different.
Probable Cause to Arrest for Larceny in a Building
Probable cause exists where the facts and circumstances presented would warrant the belief, in a person of reasonable caution, that the charged offense has been committed. “Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction.” Commonwealth v. Hason, 387 Mass. 169, 174 (1982). See also Commonwealth v. Roman, 414 Mass. 642, 647-48 (1993).
The crime of indictment for larceny in a building does not encompass every theft of property physically committed in a building. In an indictment for larceny in a building, “(i]t is not enough to prove that the property stolen was in a building at the time of the theft, and that the defendant was the thief. It is necessary to show also that the property was under the protection of the building, placed there for safe keeping, and not under the eye or personal care of someone in the building.” Commonwealth v. Lester, 129 Mass. 101, 103 (1880) (when evidence leaves it “wholly uncertain” whether property is in the possession of the owner rather than under the protection of the building, it does not warrant a conviction of larceny in a building). See also McDermott v. W.T. Grant Co. 313 Mass. 736, 737 (1943) (where merchandise displayed is under protection of storeowner’s servants rather than building, shoplifting does not constitutue “larceny in a building”); Zinkfein v. W. T. Grant Co., 236 Mass. 228, 233 (1920) (in the absence of anything in a charge of theft from a store to indicate the property, when stolen, was under the protection of the building, placed there for safekeeping, and not under the personal care of some person in the building, the crime charged is not “larceny in a building”); Robinson v. Van Auken, 190 Mass. 161, 167 (1906) (where bookkeeper had funds in her hands in the performance of her duly and took her employer’s key, in his presence, to unlock the compartment in the safe into which funds were to be put, larceny, if committed, was not “larceny in a building”).
Williams testified that the items recovered from Troy were taken while Scola and her grandmother were in the house. The grand jurors heard enough to conclude that the property recovered from Troy was stolen from 70 Harrison Street and that Troy was the thief. No reasonable inference, as opposed to a guess, can be made, however, that these items were not taken from the person of the grandmother or from an area within her immediate control. Commonwealth v. Subilosky, 352 Mass. 153, 166 (1967) (to support a charge of larceny from the person, property must be taken from the victim or wihin his area of control).
Personal property physically located in a building is either in the control of a person or persons or in the custody of the building. If the evidence were capable of supporting an inference that the items were taken from Scola’s grandmother or from an area within her immediate control, there then would be probable cause to believe that the defendant had committed the offense of larceny from a person, G.L.c. 266, §25. If the evidence were capable of supporting an inference that the items taken were not removed from Scola’s grandmother or from an area within her immediate control, then, given the rest of the evidence presented to the grand jury, there would be probable cause to believe that the defendant had committed the offense of larceny in a building, G.L. 266, §20. If, as here, the grand jurors can only speculate as to whether the property taken was in the custody of the building, there was evidence warranting an indictment for larceny, G.L.c. 266, §30, but insufficient evidence to justify arrest of the defendant — and, therefore, indictment — for the particular crime of larceny in a building.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to dismiss the indictment charging him with larceny in a building is ALLOWED, and defendant’s motion to dismiss the indictment charging him with breaking and entering with intent to commit a felony is DENIED.

Defendant made no request for an evidentiary hearing.