COMMONWEALTH vs. JUAN MIGUEL MOSCAT.

No. 99-P-1074.

Suffolk. May 9, 2000. - July 10, 2000.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,*
Threshold police inquiry, Probable cause. *Evidence,* Inference.

A police officer had probable cause to arrest a minor whom he reasonably
believed possessed alcohol and probable cause to search his person; a gun
that was unexpectedly revealed as a result of the search was properly
admissible in evidence. [624-626] BROWN, J., concurring.


COMPLAINT received and sworn to in the Dorchester Division
of the District Court Department on April 23, 1998.

A pretrial motion to suppress evidence was heard by *Rosa-
lind Henson Miller,* J., and the case was heard by her.

*Eric W. Ruben* for the defendant.

*Brian J.S. Cullen,* Assistant District Attorney, for the Com-
monwealth.

GREENBERG, J. Officer Jerome Riley of the Boston police,
while on routine patrol in the Fields Corner (Dorchester)
neighborhood of Boston at 10 P.M., April 22, 1998, got a radio
call directing him to the area of Harbell Terrace and Leonard
Street. Rowdy youths were drinking and causing a ruckus. This
was not the first time he had visited that area on such a
complaint. As he drew close to the intersection of Leonard and
Duncan Streets, he observed a group of five or six "kids" on
the corner, most of whom he recognized "by face." Standing
tall at their feet were five or six bottles, some still with beer
inside. Bringing his police car alongside the group, Riley told
them to leave. One of those who left on his admonition was the
defendant, Moscat. He was on a bicycle, and Riley saw him
struggling to turn it. As he watched the defendant maneuver it
around and ride off with some difficulty up Duncan Street, Ri-

ley noticed that the defendant had only one hand on the handlebars. He was bent over to the left, holding his left hand close to his body as if to conceal something. Riley followed and asked him to stop. "What are you hold[ing] — what are you concealing down there?" he asked. Suspecting a bottle of beer, Riley began to reach his hand toward the left side of the defendant's shirt. To his surprise, a .32 caliber revolver clanked to the ground.

As a result of this encounter, the defendant was charged with unlawful possession of a firearm (G. L. c. 269, § 10[*a*]) and possession of ammunition without the requisite firearm identification card (G. L. c. 269, § 10[*h*]; G. L. c. 140, § 129C). He moved in the District Court to suppress the weapon discovered during the stop. His motion failed. After trial and conviction on both offenses, the defendant appeals, bringing up for review the refusal to suppress.

To return to the details of the stop and subsequent events, we draw the essential facts from the judge's findings, with amplification from the record. Riley recognized most of the young people and knew some by name but not the defendant. Riley did not intend to arrest any of them. He merely told them to leave the area and warned them of the consequences should he be compelled to return to the corner that evening. While the others simply grumbled a little and then dispersed empty-handed, the judge found that Riley "reasonably believed that the defendant was secreting alcohol under his shirt."

The judge ruled that Riley was justified in reaching out to pat frisk the defendant under the holding of *Terry* v. *Ohio*, 392 U.S. 1 (1968), because of the "accumulated factors and a reasonable concern for his personal safety." Further, the judge thought that Riley's limited intrusion was proportional to the degree of suspicion that prompted the stop. She concluded that, without contact, the pat frisk had not actually been conducted before probable cause was established by the appearance of the gun.

"[T]he ultimate legal conclusion to be drawn from the fact[s] developed at the hearing [on the motion to suppress] is a matter for our review, particularly where the conclusion is of constitutional dimension." *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448 n.18 (1980). We do not reach the question whether there was a valid basis for a *Terry* stop at the outset because, on quite a different analysis from that employed by the judge, we hold that the search was incident to a lawful arrest.

We need to put aside propositions that are not involved in order to reach the particular part that is an issue. For the present analysis we need not dispute that the police, before making an arrest, may approach and question a person for investigative purposes without implicating constitutional interests as long as the individual's ability to avoid the encounter remains viable. See *Michigan* v. *Chesternut*, 486 U.S. 567, 573-574 (1988). For this reason, we need not quarrel with Riley's approach to the drinkers on the corner. Similarly, there is no dispute that the police may arrest minors in possession of alcohol. See G. L. c. 138, § 34C. Finally, we recognize that the police may handle the situation without making an arrest if they so choose. See *Cambridge* v. *Phillips*, 415 Mass. 126, 129 n.3 (1993), quoting from *Hameetman* v. *Chicago*, 776 F.2d 636, 641 (7th Cir. 1985). What the police may not do is hamper an individual's freedom of movement to the extent that an investigative inquiry will be treated as an arrest. See *Florida* v. *Royer*, 460 U.S. 491, 502-503 (1983). As such, a stop may not be so intrusive in duration or manner as to violate constitutional provisions unless done on probable cause. See *id.* at 501.

"[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Reasonable inferences may be considered as well. See *Commonwealth* v. *Kennedy*, 426 Mass. 703, 707 (1998). " 'Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense.' *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991), quoting *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976)." *Id.* at 707-708. The sum total must be "more than mere suspicion but something less than evidence sufficient to warrant a conviction." *Commonwealth* v. *Badgett*, 38 Mass. App. Ct. 624, 625 (1995), quoting *Commonwealth* v. *Roman*, 414 Mass. 642, 643 (1993).

Turning to the instant case, we are satisfied that when Officer Riley stopped the defendant on his bicycle he had probable

cause to arrest him.[1] As in *Commonwealth* v. *Kennedy, supra* at 708, were we "to scrutinize in isolation" each fact then known to the officer, we might conclude that Riley lacked probable cause. However, all of the circumstances taken together objectively warranted a reasonable belief that the defendant was currently committing a crime: possessing alcohol while underage.

First, the officer had a report that a group of rowdy teenagers were drinking alcohol and annoying the neighbors. Second, the officer saw the defendant, who looked — and was — underage, standing with friends in front of a collection of half-full beer bottles. Third, after the rest of the group took off and the defendant rode away up Duncan Street, his particular behavior on the bicycle — hunched over the seat, pressing his left arm to his side, and steering with one hand despite the obvious difficulty it gave him — drew Riley's attention. The defendant appeared to be clutching something underneath his shirt. The officer's inference that the "something" was a bottle of beer was warranted, and based on common sense. It was at this point that he left his police car and asked the defendant what he was concealing. The defendant said nothing, still holding his left arm close. Perhaps none of the aspects of the situation, standing alone, would suffice to establish probable cause for the arrest of the defendant, but taken together there was enough. See *Commonwealth* v. *Santaliz*, 413 Mass. 238, 242 (1992). Compare *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992) (police officer's observation of bag of white powder in plain view in urinal within arm's length of defendant, who was standing by but not using urinal, established probable cause).[2]

It appears that Riley's search of the defendant's person preceded his arrest. That was the circumstance in *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992), where the Supreme Judicial Court said that "[t]he fact that the search preceded the formal arrest is not important, 'as long as probable cause [to arrest] existed independent of the results of the

---

[1] "The fact that the officer may have subjectively intended only to make an investigative stop is immaterial as long as probable cause to arrest existed." *Commonwealth* v. *Owens*, 414 Mass. 595, 600 (1993). See *Commonwealth* v. *Blais*, 428 Mass. 294, 296 (1998).

[2] Because there was probable cause to arrest, it is unnecessary to consider, as the concurring justice does, whether the officer's reasonable suspicion that the defendant was carrying contraband justified his attempt to frisk him, which caused the weapon to fall into plain view.

search,' " quoting *Commonwealth* v. *Brillante,* 399 Mass. 152, 154-155 n.5 (1987). In this case, the purpose of the subsequent search of the defendant was to identify the object which the defendant was attempting to conceal under his shirt: suspected, of course, to be a bottle of beer. See G. L. c. 276, § 1 (authorizing searches incident to arrest for purpose of seizing evidence of that crime). Here the police had probable cause to search the defendant for alcoholic beverages, coupled with the exigent circumstance of his riding away from the intersection. "As the search [of his person] was constitutionally permissible in objective and scope, the [weapon was] admissible in evidence although [its] discovery was wholly unanticipated." *Commonwealth* v. *Skea,* 18 Mass. App. Ct. 685, 701 (1984).

*Judgment affirmed.*

BROWN, J. (concurring). I do not think "the search was incident to a lawful arrest." The troubling issue to be decided here, as I see it, is whether a manifestation of an intention to conduct an illegal search, if it causes contraband to be discovered, is the functional equivalent of an actual, physical, illegal search.

In the circumstances presented here, the motion judge properly could have concluded that the stop of the defendant was a permissible threshold inquiry because Officer Riley had a reasonable suspicion that the defendant was committing the misdemeanor offense of carrying alcohol on his person.

Reasonable suspicion to conduct a threshold inquiry, however, does not automatically entitle the investigating officer to conduct a protective pat frisk of the suspect. The officer must, in addition, have reason to believe that the suspect may be armed and dangerous. *Commonwealth* v. *Mercado,* 422 Mass. 367, 371-372 (1996). The motion judge listed as factors justifying Officer Riley's conducting a protective pat frisk of the defendant: (1) that Officer Riley was alone; (2) that it was ten o'clock at night; (3) that Riley's encounter with the defendant took place in the Dorchester section of Boston. These three factors are plainly insufficient to justify the protective search of the defendant. Even combining the factors of the place, the hour, and the absence of other officers with the defendant's wobbly bicycle riding and efforts at concealing something, I do not think these circumstances are sufficient to justify the pat frisk as a permis-

sible protective search.[1] Here the defendant's attempt to hide something under his shirt permitted Officer Riley to form a reasonable suspicion that the defendant was a minor in possession of alcohol, something that would have posed no danger to the officer. "[T]he . . . [police] have pointed to no particular facts from which they *reasonably* could infer that the defendant was armed and dangerous." *Commonwealth* v. *Gutierrez*, 26 Mass. App. Ct. 42, 47 (1988) (emphasis in original). But if Officer Riley had a reasonable suspicion that the defendant was concealing harmless contraband, he could not also have had a reasonable suspicion, based on the very same evidence, that the defendant was concealing a weapon.[2]

The trial judge made a specific finding, based in part on her own questioning of Officer Riley, that the officer had only reached out to the defendant with the intention of pat frisking him, but had not actually touched him, when the defendant moved his left arm, allowing the handgun he had been concealing to fall into plain view. I accept the judge's finding of fact on this point.

To me, that Riley had not touched the defendant when the gun fell has legal significance. Suppression is required if the gun was discovered as the result of an illegal search. See *Commonwealth* v. *Loughlin*, 385 Mass. 60, 63 (1982) ("Because the evidence in issue was traceable to the illegal pat-frisk of Loughlin . . . it must in these circumstances be suppressed as the 'fruit of the poisonous tree' "). But the defendant is not entitled to suppression of the gun because it accidentally fell from his person or was dropped by him *in anticipation* of an illegal search. See and compare *State* v. *Smith*, 134 N.J. 599, 621 (1994) ("the premature announcement of an intent to perform a pat-down does not debilitate the officer so that he will not later be able to perform a pat-down should sufficient facts come to light").

The motion judge warrantably could deny the defendant's

---

[1]This court need not accept the motion judge's conclusion that on the facts presented the officer had a reasonable fear for his safety. See *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995).

[2]I do not pause to discuss the Commonwealth's contention that the bottle Officer Riley thought the defendant was carrying could have been used as a weapon. The idea that Officer Riley feared that the defendant was suddenly going to club him with the object the defendant was taking such pains to conceal strains credulity.

motion to suppress because a valid threshold inquiry was followed by the discovery of the gun before the investigating officer had begun what would have been an invalid protective pat frisk.